# United States District Court
# District of Massachusetts

ANDREW ARVANITIS and
EDWARD JACOBS,
        Plaintiffs,

    v.                        CIVIL ACTION NO. 10-10213-DJC

MASSACHUSETTS DEPARTMENT
    OF CORRECTION, ET AL.,
        Defendants.

## *REPORT AND*
## *RECOMMENDATION*
## *ON MOTION TO DISMISS (#41)*

COLLINGS, U.S.M.J.

### *I. Introduction*

The defendants[1] in this civil rights action move to dismiss on the grounds

of sovereign immunity, quasi-judicial immunity and qualified immunity.  For

---

[1]

      The defendants are various officials of the Massachusetts Department of Correction, *viz.*, Carolyn S. Vicari ("Vicari"), John P. Hurley ("Hurley"), Jeffrey S. Bolger ("Bolger"), and Michael T. Maloney ("Maloney"); Alexandra McInnis ("McInnis"), an official at the Massachusetts Human Resources Division; John E. Taylor ("Taylor"), Lydia Goldblatt ("Goldblatt"), Christopher Bowman ("Bowman"), and Donald R. Marquis ("Marquis"), commissioners of the Massachusetts Civil Service Commission; John C. Cratsley ("Cratsley"), an Associate Justice of the Suffolk County Superior Court; and Barbara A. Lenk "("Lenk"), Elspeth B. Cypher ("Cypher"), David A. Mills ("Mills"), Associate Justices of the Massachusetts Appeals Court.

the reasons set out below, the Court recommends granting the motion to dismiss on the grounds that the court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine.  Alternatively, the Court recommends that Count IX be dismissed on the grounds of judicial immunity, and that the remaining counts (Counts I-VIII) be dismissed on the grounds of qualified immunity.

## II. Factual Background

The following facts are drawn principally from the plaintiffs' Amended Complaint (#20).  The Court draws a few details concerning chronology from the Massachusetts Appeals Court opinion, *see Arvanitis v. Civil Service Commission*, 74 Mass. App. Ct. 1109, 905 N.E.2d 603, 2009 WL 1272100 (Mass. App. Ct. May 6, 2009), which the Court may consider on a motion to dismiss.

## A. State Court Proceedings

The plaintiffs, Andrew Arvanitis ("Arvanitis") and Edward Jacobs ("Jacobs"), are employed by the Massachusetts Department of Correction ("DOC") as Educational Specialists.  (#20 ¶¶ 20, 23)  Both are members of the SEIU Local 509.  (#20 ¶ 22) They sought, beginning on October 15, 2000, to be reclassified to the position of "Institution School Teacher."   (#20 ¶ 23) Following state administrative procedures, they presented their requests, first

to defendants Vicari, Hurley, Bolger and Maloney, all of the DOC.  According to the allegations of the amended complaint, Maloney denied their reclassification requests on March 20, 2002.  (#20 ¶ 20)  Following the denial of their requests, at the departmental level, the plaintiffs appealed to the Massachusetts Human Resources Division ("MHRD"), under Mass. Gen. L. ch. 30, § 49 which provides that "[a]ny manager or employee of the commonwealth objecting to any provision of the classification affecting his office or position may appeal in writing to the personnel administrator and shall be entitled to a hearing upon such appeal."  After failing to obtain a favorable decision at the MHRD, the plaintiffs further appealed in July, 2002 to the Massachusetts Civil Service Commission ("the commission").  *See Arvanitis,* 74 Mass. App. Ct. 1109, 905 N.E.2d 603, 2009 WL 1272100, at * 1.  After discovery, commissioner Taylor conducted a hearing on the DOC's motion for summary judgment.  *Arvanitis,* 74 Mass. App. Ct. 1109, 905 N.E.2d 603, 2009 WL 1272100, at *1; #20 ¶ 20.  The DOC's position throughout the proceedings was that any reclassification issue was governed by the collective bargaining agreement, and that the plaintiffs were similarly situated to others in their classification.  (#20 ¶ 120)

Taylor found, after the hearing, that the plaintiffs were "similarly situated" to others in the class of education specialists, and ultimately ruled that the commission lacked jurisdiction to consider the reclassification request. (#20 ¶¶ 134-135)   Taylor submitted his recommendation to the entire commission, and on September 7, 2006, the commission accepted Taylor's recommendation by unanimous decision to deny the plaintiffs' reclassification appeal on the basis of lack of jurisdiction.   Specifically, the commission dismissed the plaintiffs' appeal under Mass. Gen. L. ch. 30, § 49, which provides: "[t]he provisions of this section, as they relate to appeals on the reallocation of a class or group of classes to a higher job group or job groups, shall not apply to any employee whose position is included in a collective bargaining unit represented by an employee organization." *See Arvanitis,* 74 Mass. App. Ct. 1109, 905 N.E.2d 603, 2009 WL 1272100, at *1. Ultimately, the commission concluded, among other things, that it "*does not have jurisdiction over challenges to reallocation of positions resulting from collective bargaining.*" *Arvanitis,* 74 Mass. App. Ct. 1109, 905 N.E.2d 603, 2009 WL 1272100, at *1 (internal quotation marks and record citation omitted).

The plaintiffs then sought judicial review of the agency's decision in

Suffolk County Superior Court pursuant to Mass. Gen. L. ch. 30A § 14 (permitting judicial review of a final decision of any agency in an adjudicatory proceeding).   According to the federal complaint, the plaintiffs presented various due process arguments to the state trial court.  Following a hearing on the matter, the state court (Cratsley, J., a named defendant in this action) affirmed the commission's decision.  The plaintiffs next appealed the state trial court decision to the Massachusetts Appeals Court (before Associate Justices Lenk, Cypher and Mills, all of whom are named defendants in this case).  On May 6, 2009, following a hearing, the Massachusetts Appeals Court affirmed the decision of the trial court.  According to the Massachusetts Appeals Court: the trial court "considered the plaintiff's assertions that the commission made seven errors in its decision.  He stated that it was inappropriate to address each assertion of error because those assertions did not address the statutory jurisdictional issue on which the commission based its decision." *Arvanitis,* 74 Mass. App. Ct. 1109, 905 N.E.2d 603, 2009 WL 1272100, at *2 (footnote and record citation omitted).  The Massachusetts Appeals Court, in affirming the judgment of the trial court, further stated that "[t]he judge properly deferred to the commission's reasonable interpretation of its statutory authority to

conclude that the plaintiffs are members of a class, and that the commission does not have jurisdiction over challenges to reclassification where such a class is covered by collective bargaining." *Arvanitis,* 74 Mass. App. Ct. 1109, 905 N.E.2d 603, 2009 WL 1272100, at *2 (citation omitted).

The plaintiffs sought further appellate review from the Massachusetts Supreme Judicial Court, which denied the request on September 10, 2009. *Arvanitis v. Civil Service Com'n*, 454 Mass. 1109, 913 N.E.2d 866 (Mass. Sept. 10, 2009) (Table).

## B. United States District Court Proceedings

On January 27, 2010, the plaintiffs filed suit in federal district court complaining of myriad procedural defects at every level of the state court proceedings. (#1)  With leave, the plaintiffs filed their Amended Complaint (## 17, 20) on November 2, 2010 to assert their claims against the defendants in their individual capacities.   In essence, the plaintiffs allege that the defendants deprived them of their federal due process rights by failing to follow proper procedures in considering their reclassification requests.  In Count I against the DOC defendants Vicari, Hurley, Bolger and Maloney, and in Count II against Bolger and Maloney, the plaintiffs appear to complain, generally, that

6

these four defendants failed to follow DOC procedural rules in denying their reclassification request.  Specifically, they claim that the defendants failed to issue and consider an "Interview Guide" in connection with their reclassification request.  On this basis, they claim in Count I a deprivation of their federal due process rights.  (#20 ¶¶ 42, 48)  In Count II, the plaintiffs allege that defendants Bolger and Maloney deprived them of their federal due process rights by denying the plaintiffs an opportunity to submit a rebuttal in response to the grounds cited as reasons for denying their reclassification request. (#20 ¶¶ 58-60)  They complain, *inter alia*, that Maloney "acted with negligent indifference and omission towards the due process requirements by his failure to require that the final submission of documents to him for decision was complete." (#20 ¶ 58)

In Count III, the plaintiffs assert that McInnis, a Senior Account Analyst and/or acting Director, Workforce Management Group for the [MHRD]," (#20 ¶ 7), denied the plaintiffs' reclassification appeals on June 5, 2002, without granting them a hearing before rendering her decision.  (#20 ¶ 65)  According to the amended complaint, McInnis' failure to conduct a hearing before rendering her decision violated their federal due process rights.  (#20 ¶¶ 62-72)

In Count IV, the plaintiffs complain about several procedural deficiencies in the appeal proceedings before the commission.  First, the plaintiffs sought to subpoena certain DOC employees for the anticipated hearing before the commission.  Although the facts are unclear from the amended complaint, it appears that commissioner Taylor, who conducted the hearing, failed to act on the plaintiffs' subpoena requests.  (#20 ¶¶ 79, 93)  It also appears from the amended complaint that the DOC formally opposed the issuance of the subpoenas.  (#20 ¶ 83)  They complain in Count IV, that defendant Bolger's opposition to the issuance of the subpoenas "contained demonstrably false and misleading statements," (#20 ¶ 83); they contend that Bolger "did knowingly act with a personal bias, animus, and reckless disregard for the truth regarding the subpoena requests . . . with the intent to deprive [the plaintiffs] of due process rights granted [by state statute]."  (#20 ¶ 91)  They <u>further</u> complain that Taylor "did not take any action regarding [the plaintiffs'] subpoena requests," (#20 ¶ 93) and that Taylor's failure to act constituted a deprivation of their federal constitutional rights.  (#20 ¶¶ 94-95) In addition, they  complain, in Count V, that Taylor ignored two properly filed motions to remand filed by the plaintiffs; they claim that Taylor's "negligent conduct" in failing to act on these motions violated their constitutional rights.  (#20 ¶¶ 101-102)

In Count VI, the plaintiffs allege that Taylor failed to act on some sixteen motions submitted by the plaintiffs, whereas Taylor issued rulings on three motions submitted by the defendants.  (#20 ¶ 112) The plaintiffs also contend that Taylor expressed irritation at the volume of filings submitted by the plaintiffs.  (#20 ¶¶ 115-116)  The plaintiffs assert that these facts establish Taylor's "negative bias and unlawful animus" towards reclassification appeals by union members, and they further complain that Taylor's adverse ruling was colored by Taylor's bias in favor of the defendants.  (#20 ¶ 136) Finally, in Count VII, the plaintiffs allege that Taylor received an "ex parte communication . . . submitted by the MHRD," in contravention of Massachusetts regulations. (#20 ¶ 153)

In Count VIII, the plaintiffs attack the commission's decision adopting Taylor's recommendation because, according to the amended complaint, the commission did not consider the numerous alleged due process violations.  The plaintiffs allege that the commission's failure to uphold the procedural safeguards cited by the plaintiffs amounted to a due process violation.  (#20 ¶166)

In Count IX, the plaintiffs allege that the Massachusetts courts failed to consider the various due process violations raised by the plaintiffs.  (#20 ¶¶ 179,

185)  Based on these allegations, the plaintiffs assert federal due process violations against defendants Cratsley, Lenk, Cypher and Mills.

On February 24, 2011, the defendants filed a Motion to Dismiss (#41) the amended complaint, along with a Memorandum in Support of Motion to Dismiss (#42).  On March 29, 2011, the plaintiffs filed a Memorandum in Support of Opposition to Motion to Dismiss (#44).  At this juncture, the motion to dismiss is ripe for disposition.

### III. Discussion

The defendants move to dismiss all counts on the basis of sovereign immunity.  They argue that, although the plaintiffs have named individual actors as defendants, the suit is essentially one against the state, and so barred by the Eleventh Amendment.  (*See* #42 at 19-22)  In addition, they argue that all claims against the state judges are barred by the doctrines of judicial immunity and *Rooker-Feldman*.  Finally, they contend that Counts I-VIII against the remaining defendants must be dismissed on the basis of quasi-judicial immunity and/or qualified immunity.

## A. Standard of Review

The defendants have moved to dismiss on the basis of lack of subject matter jurisdiction, and on the grounds of sovereign immunity, quasi-judicial

immunity, and qualified immunity.   At the motion to dismiss stage, the Court

must "accept as true the plaintiff's well pleaded facts and draw all inferences in

its favor."   *San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá*, No. 09-2566,

__F.3d__, __, 2011 WL 2436607, at *4 (1st Cir. June 17, 2011).

## B. Sovereign Immunity

The defendants first argue that the plaintiffs are essentially suing the state;

the defendants argue that the plaintiffs "seek an order binding the Department

to act either by granting their job reclassification appeals or, alternatively, by

holding further proceedings that could culminate in reclassification." (#42 at 19)

The defendants argue that "[t]he Commonwealth and its treasury are clearly

placed at risk" because it is the Commonwealth "that would receive the

employee's services and pay the employee's corresponding wages if the

reclassification was accomplished." *Id.*

This argument misses the mark.   The Eleventh Amendment does not

prohibit a federal court from granting prospective injunctive relief against a state

officer even though "the fiscal consequences to state treasuries . . .[is] the

necessary result of compliance" with the relief. *See Edelman v. Jordan*, 415 U.S.

651, 667-668 (1974) ("Such an ancillary effect on the state treasury is a

permissible and often inevitable consequence of the principle announced in *Ex*

*parte Young*, [209 U.S. 123 (1908)]"). The Court concludes that the defendants have failed to make a case at this juncture that sovereign immunity bars the suit.

## C. *Rooker-Feldman*

The defendants also move to dismiss Count IX on the basis of the *Rooker-Feldman* doctrine.[2] In the Court's view, the *Rooker-Feldman* doctrine, even as narrowed in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005), bars this federal court action in its entirety. And because the *Rooker-Feldman* doctrine "is jurisdictional, and [it] . . . cannot be ignored." *Maymó-Meléndez v. Álvarez-Ramírez*, 364 F.3d 27, 33 n.7 (1st Cir. 2004) (citations omitted). Some exegesis is required.

The *Rooker-Feldman* doctrine bars federal district courts from exercising jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284. Here, there is no question that the plaintiffs are "state-court losers" and that the state-court judgment was "rendered before the district court proceedings commenced." The only arguable question, in the

---

[2]

The Rooker-Feldman doctrine derives its name from two Supreme Court cases: D.C. Court of Appeals v. Feldman, 460 U. S. 462 (1983) and Rooker v. Fid. Trust Co., 263 U. S. 413 (1923).

Court's view, is whether the injuries of which the plaintiffs complain were "caused by" the state-court judgments. "Post-*Exxon*, the lower courts cannot rely on *Rooker-Feldman* to dismiss a case unless, *inter alia*, the federal plaintiff seeks redress of an injury *caused by* an allegedly erroneous state court decision; if the plaintiff alleges a constitutional violation by an adverse party independent of the injury caused by the state court judgment, the doctrine does not bar jurisdiction." *Davison v. Government of Puerto Rico-Puerto Rico Firefighters Corps.*, 471 F.3d 220, 222 (1st Cir. 2006)  (emphasis in original).  An examination of analogous First Circuit cases suggests that this case falls within *Rooker-Feldman*'s ambit.

In *Davison v. The Government of Puerto Rico-Puerto Rico Firefighters Corps*, *supra*, the First Circuit concluded that *Rooker-Feldman* barred a federal suit in which plaintiffs challenged an administrative order of the Puerto Rico Firefighters Corps ("PRFC"), and the decision of the Puerto Rico courts upholding the PRFC because the plaintiffs had filed an untimely appeal.  The First Circuit rejected the argument that *Rooker-Feldman* ought not apply because the plaintiffs had "never had their day in court and thus [had] never been allowed to present any evidence or argue the merits of their case." *Id.* at 223.

The First Circuit reasoned:

> Plaintiffs may not have actually argued the merits of their claims in state court, but to rule that Plaintiffs must be allowed a 'day in court' would be to say that the Puerto Rico Court of Appeals was wrong in holding that Plaintiffs' initial appeal of the PRFC order was untimely and that the highest court in Puerto Rico was wrong in denying Plaintiffs' challenge to the same order on the grounds of res judicata. *Rooker-Feldman* squarely applies when a plaintiff insists that we must review and reject a final state court judgment.

*Id. Davison* further rejected the argument that the plaintiffs had asserted a viable substantive due process claim against the PRFC and the state courts, which was "independent of" the injury caused by the state court judgment:

> Plaintiffs' reasoning fails . . . because the only real injury to Plaintiffs is ultimately still caused by a state court judgment.   Plaintiffs sought to challenge [on due process and equal protection grounds] the PRFC's conduct and resultant order, but the highest state court in Puerto Rico refused to hear the challenge on the grounds of res judicata.   The order was thus upheld, and this is the injury of which the Plaintiffs complain. To find for Plaintiffs now would require us to declare that the state court wrongly decided the Plaintiffs' claim.   The *Rooker-Feldman* doctrine prevents us from doing this.

*Id.*

Similarly, in *Maymó-Meléndez v. Álvarez-Ramírez*, 364 F.3d 27, 33 (1st

14

Cir.), cert. denied, 543 U. S. 872 (2004),[3] the plaintiff sought to challenge sanctions imposed by the Puerto Rico horse Racing Administrator and upheld by the Racing Board. The plaintiff sought review of the Racing Board's decision in Puerto Rico courts, which affirmed the Racing Board's decision. As here, the plaintiff filed suit in federal district court alleging due process violations against the Racing Administrator and Board, based on his contention, among other things, "that bias infected the administrative proceeding." *Id.* The First Circuit concluded that *Rooker-Feldman* barred suit, and rejected the plaintiff's argument that he had been denied a full and fair opportunity to litigate the due process issues:

> [T]he Racing Administrator and the Racing Board may have been biased, unfair, or flat out wrong; but the state provided a judicial remedy, [the plaintiff] invoked it, and he lost. . . . . To enjoin enforcement of the Racing Board's sanction, after its affirmance by the state court, amounts to a collateral attack on a state court judgment. *Rooker-Feldman* does not depend on what issues were actually litigated in the state court; and it is enough that granting [the plaintiff] the injunction he seeks would effectively overturn the state court's decision.

*Id.* at 33. *Cf. also Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico,* 410 F.3d 17, 21 (1ˢᵗ Cir. 2005) ("'If the constitutional

---

[3]

Although this case preceded the Supreme Court's decision in *Exxon,* nothing in *Exxon* calls into question the reasoning or holding of *Maymó-Meléndez.*

questions stated in the [federal complaint] actually arose in the [state case], it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of discretion.'") (quoting *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 415-416 (1923)).

Likewise here, the plaintiffs complain that they failed to receive the process they were due at each step of the administrative process: they contend that they were precluded from presenting evidence, that the tribunals were biased and that the state court refused to consider their various due process complaints. The gravaman of their complaint, however, is that the state courts were wrong in concluding that their reclassification requests were governed by a collective bargaining agreement, which divested the commission of jurisdiction to hear their complaint. Their amended complaint asks this Court, *inter alia*, to declare that the defendants' conduct violated due process, to "[v]acate the rulings of the defendants," (#20 at 48) and otherwise to remand the matter for consideration with proper procedural safeguards. Necessarily, however, the plaintiffs ask the federal court to set aside the Massachusetts Appeals Court's decision affirming the determination that the commission lacked jurisdiction to consider the plaintiffs' reclassification request. *Rooker-Feldman* prohibits lower federal courts from doing so.

## D. Judicial Immunity

Alternatively, the defendants move to dismiss Count IX against defendants Cratsley, Lenk, Cypher and Mills on the basis of judicial immunity.  The Court agrees that dismissal on this basis is warranted.  "Judges are entitled to absolute immunity from lawsuits even where they are accused of deciding the case due to improper motives." *Guzmán-Rivera v. Lucena-Zabala*, 642 F.3d 92, 96 (1ˢᵗ Cir. 2011) (citing *Butz v. Economou*, 438 U.S. 478, 508-509 (1978)).  *See also Becks v. Plymouth County Superior Court*, 511 F. Supp.2d 203, 206 (D.Mass. 2007) ("Absolute immunity from civil liability applies to any judicial officer for any normal and routine judicial act. . . .  This immunity applies no matter how erroneous the act may have been, how injurious its consequences, how informal the proceeding or how malicious the motive.") (citations omitted).[4]  The only exception to this immunity principle is inapplicable here, as the plaintiffs have made no allegation that the courts in question were acting "'in the clear absence of all jurisdiction.'" *Id.* (quoting *Malachowski v. City of Keene*, 787 F.2d 704, 710

---

[4] The plaintiffs reliance on *Pulliam v. Allen*, 466 U.S. 522 (1983) is misplaced.  Although *Pulliam* held "that judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity," *id.* at 541-542, this holding was abrogated by The Federal Courts Improvement Act of 1996 ("FCIA"), which amended § 1983 to provide that "in any action brought against a judicial officer for an act of omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."  Pub. L. No. 104-317, § 309(c), 110 Stat. 3853 (codified as amended at 42 U.S.C. § 1983).  *See Phillips v. Conrad*, No. 10-40085-FDS, 2011 WL 309677, at *7 n.9 (D. Mass. Feb. 18, 2011).

(1st Cir.1986)).

For these reasons, the Court recommends, in the alternative, that Count IX be dismissed against all of the state court judges named in the amended complaint.

## E. Quasi-Judicial Immunity

The defendants have also moved to dismiss the amended complaint against Taylor and the other commissioners on the alternative basis of quasi-judicial immunity.  The defendants have not met their burden here to establish that the commissioners can claim "an exemption of that scope." *Bettencourt v. Board of Registration In Medicine of Com. of Mass.,*  904 F.2d 772, 784 n.15 (1st Cir. 1990) (internal quotation marks and citation omitted).  That is to say, the defendants are obliged to show that:  "(1) their positions are akin to that of judges; (2) the potential for vexatious lawsuits is great; and (3) enough safeguards exist to protect . . . constitutional rights." *Id.*  The defendants have devoted a single line to this argument, (*see* #42 at 25-26), and the Court concludes that the defendants have failed to meet their burden to establish that the doctrine of quasi-judicial immunity applies.

## F.  Qualified Immunity

The defendants are on more solid ground in their alternative argument

invoking qualified immunity principles.  They argue that the plaintiffs, at most, have alleged that "the defendants, acting within the scope of their duties during the reclassification process, made an incorrect decision" that the plaintiffs had to pursue their reclassification requests on a collective basis.  (#42 at 26)  According to the defendants, accepting the allegations as true, no procedural due process violation occurred because "the problem could have been resolved in a petition for judicial review under Mass. Gen. L. c. 30A, an avenue of relief they pursued." (#42 at 26-27)  In short, no procedural due process violation could have occurred because the state provided constitutionally adequate process.  The Court agrees.

"Qualified immunity shields government officials from personal liability for damages arising from actions taken while performing discretionary functions." *San Gerónimo Caribe Project, Inc.*, __F.3d at __, 2011 WL 2436607, at *10.  "Officials are entitled to qualified immunity unless (1) 'the facts that a plaintiff has alleged or shown make out a violation of a constitutional right' and (2) the right at issue was 'clearly established' at the time of their alleged misconduct." *Id.* at __, 2011 WL 2436607, at *10 (internal quotation marks and citations omitted).  Courts analyzing an assertion of qualified immunity "may conduct the inquiry sequentially, or resolve a particular case on the second prong

19

alone." *Barton v. Clancy*, 632 F.3d 9, 22 (1ˢᵗ Cir. 2011). Here, the Court concludes that the plaintiffs have failed to allege a violation of a constitutional right.

"A plaintiff seeking to establish a procedural due process claim under 42 U.S.C. § 1983 must allege that the defendants deprived it of a property interest while acting under color of state law and without providing constitutionally adequate process." *San Gerónimo Caribe Project, Inc.,* __F.3d at __, 2011 WL 2436607, at *5 (citing *Maymí v. P.R. Ports Auth.*, 515 F.3d 20, 29 (1st Cir. 2008)). Assuming that the plaintiffs have adequately claimed deprivation of a constitutionally protected property interest,[5] any such deprivation, standing alone, is not unconstitutional. Rather, "'what is unconstitutional is the deprivation of such an interest *without due process of law*.'" *Id.* (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). Here, the plaintiffs' allegations of procedural due process all concern the adequacy of the process they received anent their reclassification request: in general, they complain that the agencies

---

[5]

The Court bypasses the question of whether the plaintiffs have adequately alleged a constitutionally protected property interest. The Court notes, however, that federal courts "look to state law to see if such property interests exist." *Concepción Chaparro v. Ruiz-Hernandez*, 607 F.3d 261, 264 (1ˢᵗ Cir.), *cert. denied sub nom.*, *Municipality of Aguada, Puerto Rico v. Acevedo-Orama*, 131 S. Ct. 665 (2010). Given the conclusion of the Massachusetts state courts that the plaintiffs here do not have a right to seek reclassification outside of the collective bargaining agreement, it is far from clear whether the plaintiffs have adequately alleged a legitimate claim of entitlement to reclassification.

failed to follow their own rules (for example, that the DOC defendants failed to issue and consider an "interview guide," and did not allow plaintiffs to submit a rebuttal) and that commissioner Taylor was biased against them.   But "[t]he standard the defendant must meet here is not high: the U.S. Constitution requires only 'some [predeprivation] opportunity to respond.'" *Chmielinski v. Massachusetts*, 513 F.3d 309, 316 (1st Cir. 2008) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)).   That is, "'the root requirement' of the Due Process Clause [is] 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'" *Loudermill*, 470 U.S. at 542 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)).   (footnote omitted) Furthermore, "[a]n agency's failure to follow its own rules may be significant in administrative law, but the federal Due Process Clause does not incorporate the particular procedural structure enacted by state or local governments." *Chmielinski*, 513 F.3d at 316 n.5 (internal quotation marks and citation omitted); *see also Boston Environmental Sanitation Inspectors Ass'n v. City of Boston*, 794 F.2d 12, 13 (1st Cir. 1986) ("Mere violation of state statutory requirements does not offend federal constitutional due process.").   In other words, the plaintiffs wrongly argue that the defendants' failure to follow state procedures *simpliciter* amounts to a violation of their federal constitutional due

process rights.  The First Circuit has recently addressed the sort of allegations the

plaintiffs attempt to assert here:

> Most of [the plaintiff's] allegations are a call to
> transpose the procedural protections of a court of law
> into his termination hearing: his desire for pre-hearing
> discovery, his request that the witnesses be sworn and
> sequestered, and his assertion of various improprieties
> in the admission and consideration of evidence. These
> are easily dismissed. The termination hearing is not a
> court of law, and the same level of process is not
> required. The U.S. Constitution requires only that [the
> plaintiff] was provided notice and a meaningful
> opportunity to respond, a requirement that was clearly
> met on the facts of this case. The Constitution requires
> only an initial check against erroneous decisions, not
> that the state follow best practices.

*Chmielinski*, 513 F.3d at 316 (internal quotation marks, bracket and citation
omitted) (footnote omitted).[6]

Further, the allegations of the amended complaint show that adequate

procedures existed after the initial DOC determination, and that the plaintiffs

availed themselves of those remedies.  *Cf. Boddie,* 401 U.S. at 378 ("The

formality and procedural requisites for the hearing can vary, depending upon the

---

[6] The plaintiffs also allege that Taylor was biased against them because he did not take any action on the plaintiffs' subpoena requests, he appeared to rule only on the defendants' motions,  and he seemed irritated by the "reams of paperwork" submitted by the plaintiffs.  The First Circuit has rejected the argument that similar claims of bias violate of due process principles, especially where, as here, there is no allegation that any alleged bias "deprived the plaintiffs of put[ting] [their] version of facts before the decisionmaker." *Chmielinski v. Massachusetts*, 513 F.3d 309, 318 (1st Cir. 2008).

importance of the interests involved and the nature of the subsequent proceedings.") (footnote omitted). Thus, although the plaintiffs complain about the process they received at the departmental level (Counts I and II against the DOC defendants) and before the personnel administrator (Count III against McInnis at MHRD),[7] any such complaints fail to identify a constitutional violation because (at the least), according to Massachusetts statutory law, the commission considers *de novo* a request for reclassification. *See* Mass. Gen. L. ch. 30 § 49 ("Said commission shall hear all appeals as if said appeals were originally entered before it."). Any purported deficiency in process could have been corrected by the commission, and the plaintiffs availed themselves of the remedial process. Likewise, the state provides adequate remedies for any alleged deficiencies in the process the plaintiffs received before the commission. *See* Mass. Gen. L. ch. 30A § 14 (providing for judicial review of agency decisions on the administrative record; court may take additional evidence "in cases of alleged irregularities in procedure before the agency, not shown in the record").

---

[7]

The plaintiffs complain that McInnis violated their constitutional due process rights because she denied the plaintiffs' reclassification request without granting them a hearing. Yet, Massachusetts statutory law did not necessarily require McInnis to provide a hearing: "The provisions of this section [requiring, *inter alia*, a hearing before the personnel administrator], as they relate to appeals on the reallocation of a class or group of classes to a higher job group or job groups, shall not apply to any employee whose position is included in a collective bargaining unit represented by an employee organization." Mass. Gen. L. ch. 30, § 49. Assuming for the sake of argument that McInnis wrongly decided that a hearing was not required in the plaintiffs' case, the commission, by statute, can review that decision *de novo*.

And finally, the plaintiffs pursued their claims to the Massachusetts Appeals Court under Mass. Gen. L. ch. 30A § 15.

Although the plaintiffs are dissatisfied with result of the process they received, the plaintiffs received constitutionally sufficient process to remedy any purported deprivation. *Cf. Maymí,* 515 F.3d at 30 (where Puerto Rico legislature "created an appeals process by which citizens are provided a legal forum in which to challenge administrative agency determinations [and] those decisions are then subject to judicial review [,and] [plaintiff] availed herself of these administrative procedures[,] . . . [those] state remedies provide[d] sufficient procedural due process for the harms allegedly suffered"). *Cf. also Amsden v. Moran*, 904 F.2d 748, 756 (1st Cir. 1990) ("The panoply of state remedies available to [the plaintiff]–and utilized by him–guaranteed the fairness of the state's procedures to a point well above the constitutional minimum.").

## IV. Recommendations

For all the above reasons, the Court RECOMMENDS that the Motion to Dismiss (#41) be ALLOWED and that the amended complaint be dismissed in its entirety for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. Alternatively, the Court RECOMMENDS that Counts I-VIII be dismissed against all defendants on the basis of qualified immunity, and that

Count IX be dismissed against all defendants named therein on the basis of judicial immunity.   Further, regardless of the grounds adopted, the Court RECOMMENDS that final judgment should enter for the defendants.

## V. Review by the District Judge

The parties are hereby advised that any party who objects to these recommendations must file a specific written objection thereto with the Clerk of this Court *on or before the close of business on September 9, 2011*.   The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections.   The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review.   *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Robert B. Collings

25

ROBERT B. COLLINGS
United States Magistrate Judge

August 11, 2011.