## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

```
*******************************
           PLAINTIFFS        *
                             *
ANDREW ARVANITIS             *
                             *
EDWARD JACOBS                *
                             *
              V.             *
                             *
           DEFENDANTS        *   CIVIL ACTION
                             *
CAROLYN VICARI               *   NO. 1:10-CV-10213-DJC
                             *
JOHN HURLEY                  *
                             *
JEFFREY S. BOLGER            *
                             *
MICHAEL MALONEY              *
                             *
ALEXANDRA MCINNIS            *
                             *
JOHN E. TAYLOR               *
                             *
LYDIA GOLDBLATT              *
                             *
CHRISTOPHER BOWMAN           *
                             *
DONALD R. MARQUIS            *
                             *
JOHN C. CRATSLEY             *
                             *
BARBARA A. LENK              *
                             *
ELSPETH B. CYPHER            *
                             *
DAVID A. MILLS               *
*******************************
```

## OPPOSITION TO REPORT AND RECOMMENDATION ON MOTION TO DISMISS

**CURRENT ISSUE**

1. Plaintiffs pro se Arvanitis and Jacobs object to the Report and Recommendation on Motion to Dismiss[1] by Magistrate Robert B. Collings (hereinafter Collings) to dismiss the action on the grounds of either (1) Rooker-Feldman doctrine or (2) qualified and judicial immunity. The plaintiffs offer the following clarifications to the facts and reasoning presented in the RAR that are in error and submit that sufficient cause exists to deny the defendant's motion to dismiss the complaint.

**ARGUMENT AGAINST**

**DISMISSAL BASED ON THE ROOKER-FELDMAN DOCTRINE**

2. The RAR declares that the relief sought by Plaintiffs Arvanitis and Jacobs to "[v]acate the rulings of the defendants" (RAR at 12) is essentially "ask[ing] the federal court to set aside the Massachusetts Appeals Court's decision affirming the determination that the commission lacked ju-

---

[1] Magistrate Robert B. Collings' Report and Recommendation on Motion to Dismiss shall be hereinafter referred to as RAR and page.

risdiction to hear the plaintiffs' reclassifica-

tion request" (RAR at 13) invokes Rooker-Feldman.

3.  Arvanitis and Jacobs state that they do not seek

to overturn or vacate the Massachusetts Superior

and Appeals Court determinations affirming the

denial of their GROUP [emphasis added] reclassi-

fication request and assert that the denial of

their group reclassification appeal is governed

by contract law – specifically Article 17A which

states in relevant part:

"ARTICLE 17A        CLASS REALLOCATIONS

Section 1

Class reallocations may be requested by the
President of SEIU Local 509/Secretary of the
Alliance whenever he/she believes a reallo-
cation is justified by the existence of an
inequitable relationship between the posi-
tions covered by the reallocation request
and other state positions. In the event the
Personnel Administrator agrees that such an
inequity exists and in the event such real-
location shall result in the need for a
funding request to implement the realloca-
tion, the Personnel Administrator may pursue
options for funding at the time of issuance
of said concurrence, or defer discussion on
funding to negotiations for a successor Col-
lective Bargaining Agreement, at the sole
discretion of the Personnel Administrator.

Section 2

The Employer and the Union agree that the
procedure provided in Section 1 shall be the
sole procedure for class reallocation for
all classes covered by this Agreement. No

3

other class reallocations shall be granted
under any other provisions of this Agree-
ment.

Section 3

The parties acknowledge that the classifica-
tion plan covering titles in Units 8 and 10
addresses the issue of pay equity/comparable
worth. The class reallocation process con-
tained in this Article shall be the proce-
dure for addressing any additional pay equi-
ty/comparable worth concerns about titles
within bargaining units covered by this
Agreement."

4.  Arvanitis and Jacobs maintain that their reclas-

    sification request is governed by the Collective

    Bargaining Agreement (hereinafter CBA) of which

    they are subject to.

5.  The injury caused to them stems from the viola-

    tion of their CBA with there being no state court

    judgment regarding this injury.

6.  The commission has previously (a) noted, (b)

    stated recognition of, and (c) heard numerous

    cases of appeals of employees covered by a col-

    lective governing agreement as outlined in the

    complaint.

7.  What the defendants have impermissibly introduced

    is a legally erroneous reliance that M.G.L. Chap.

    30, §49 is the governing statute.    This reliance

4

is specifically refuted by M.G.L. Chap. 150E, §

which clearly states

"Chapter 150E Labor Relations:   Public Em-
ployees

Section 7. (d) If a collective bargaining
agreement reached by the employer and the
exclusive representative contains a conflict
between matters which are within the scope
of negotiations pursuant to section six of
this chapter and any municipal personnel or-
dinance, by-law, rule or regulation; the
regulations of a police chief pursuant to
section ninety-seven A of chapter forty-one
or of a police commissioner or other head of
a police or public safety department of a
municipality; the regulations of a fire
chief or other head of a fire department
pursuant to chapter forty-eight; any of the
following statutory provisions or rules or
regulations made thereunder:

(c) section twenty-four A, paragraphs (4)
and (5) of section forty-five, paragraphs
(1), (4) and (10) of section forty-six, sec-
tion forty-nine, as it applies to allocation
appeals, and section fifty-three of chapter
thirty;

(k) sections forty-five to fifty, inclusive,
of chapter thirty;

**_the terms of the collective bargaining
agreement shall prevail._** [emphasis added]

8.   As the CBA does not conflict with the provisions

of M.G.L. Chap. 30, §49 in where it (the agree-

ment) prohibits group reclassification appeals to

proceed before the Commission as noted under Ar-

ticle 17A, then the decision of the commission

5

regarding the findings that the appeal before it
was of a group nature should be left unchanged.

9.   Accordingly, Arvanitis and Jacobs do not seek nor
     are entitled to vacate the rulings of the defend-
     ants as it relates to the finding regarding a
     group reclassification appeal.

10.  However, the defendants have impermissibly ig-
     nored the individual aspect of the plaintiffs'
     reclassification appeals and it is this injury of
     which the plaintiffs seek relief.

11.  Collings states that "if the plaintiff alleges a
     constitutional violation by an adverse party in-
     dependent of the injury caused by the state court
     judgment, the doctrine does not bar jurisdic-
     tion."  (RAR at 13)

12.  Article 17 of the CBA clearly states that

     "ARTICLE 17   CLASSIFICATION AND RE-
     CLASSIFICATION

     Section 3 Individual Appeal of Classifica-
     tion

     Individual employees shall continue to have
     the same right to appeal the propriety of
     the classification of his/her position
     through the Personnel Administrator or the
     Civil Service System which the individual
     employee enjoyed on June 30, 1976, and such
     appeal may not be the subject of a grievance
     or arbitration under Article 23A herein."

6

13. Where the CBA of the plaintiffs clearly provides for reclassifications to be clastic, it surely follows then any denial of the group appeal under Article 17A does not apply to the individual appeal under Article 17 as it is well established that no part of a contractual agreement may be used to defeat another.

14. Arvanitis and Jacobs further state their individual reclassification appeals also contained a statutory request made pursuant to M.G.L. Chap 31, §2 which was ignored. It is these dual injuries under Article 17 and Chapter 31 by which they seek relief.

15. The commission had already ruled prior to the plaintiffs' appearances in 2005 that group appeals containing a particular person did not constitute grounds to deny jurisdiction to the same person if he/she submitted an individual appeal as well. This is clearly and unmistakably evidenced by the following Findings of Fact in an identical case where the commission found:

"20. On or about October 30, 2001, a Group Reclassification Appeal dated October 11, 2001 was filed the Division's Human Resource Department. The Auditor IIs at the Division were seeking to be reclassified to the posi-

7

tion of Auditor III and the Auditor IIIs in-
cluding the Appellant were seeking to be re-
classified from Auditor III to Auditor IV
(Exhibit 24).

21.  On or about June 18, 2002, the Appel-
lant filed an individual Reclassification
Appeal seeking to be reclassified from an
Auditor Ill position to an Auditor IV posi-
tion (Exhibit 26).

22.  Pursuant to this request, the Appellant
was interviewed on January 28, 2003 by the
Appointing Authority's Personnel Analysts
regarding his position (Exhibit 24)

23. In his written response to the questions
posed to him, the Appellant described the
basic reason for his request to be reclassi-
fied as follows: "additional job responsi-
bilities and duties as required by the Di-
rector of Revenue. Assist the Director as
needed for state wide audit control and oth-
er administrative functions"(Exhibit 26).

24. On September 2, 2003, The Personnel Ana-
lyst of the Appointing Authority's Human Re-
sources Division, after review of the appeal
audit, denied the Appellant's request for
reclassification of his position (Exhibit
31).

25. On September 22, 2003, the Appellant
filed an appeal of the decision of the Per-
sonnel Analyst and on January 8, 2004, the
Human Resource Division denied the Appel-
lant's appeal (Exhibit 5)."MOHAMMED HAROON
v. Division of Unemployment Assistance Dock-
et No. C-04-88  18 MCSR 391, 392.

16.  Mohammed Haroon is a member of a union and is

subject to a CBA.  The contract in which he is a

subject to has identical mechanisms for group ap-

peals versus individual appeals.

8

17. The commission wrote in it decision that it did
    "not have jurisdiction over challenges to reclas-
    sification appeals where such a class is covered
    by a collective bargaining agreement." (RAR at
    6). The lack of jurisdiction asserted by the com-
    mission is true - but only for group appeals as
    detailed under Article 17A.

18. Collings stated

    "…there is no question that the plaintiffs
    are 'state-court losers…' with …"[t]he only
    arguable question, in the Court's view is
    whether the injuries of which the plaintiffs
    complain were 'caused by' the state-court
    judgment" (RAR at 13) and "…the only real
    injury to the Plaintiffs is ultimately still
    caused by a state court judgment." (RAR at
    14)

19. No findings nor facts exist that establish as a
    matter of law as mandatorily required for summary
    judgment that the individual reclassification re-
    quests made by Arvanitis and Jacobs pursuant to
    the provisions of Article 17 and Chapter 31 have
    been given the bare minimum requirements required
    by the U.S. Constitution.

20. The assertion that the state courts investigated
    and found the subsequent claim by the Commission
    that it lacked jurisdiction under M.G.L. Chap 30,
    §49 is not dispositive for the purposes of Rook-

er-Feldman as M.G.L. Chap 30, §49 is not the gov-
erning statute unless the CBA is in disagreement
with it.

21. The CBA is not is disagreement with M.G.L. Chap
30, §49.

22. The injury that plaintiffs allege stems from con-
stitutional violations regarding Article 17 of
the CBA in where the defendants, acting in their
individual administrative capacities up to and
including the state courts never address the in-
dividual appeals of the plaintiffs.

23. Accordingly, the injury complained of by the
plaintiffs was not caused by a state court judg-
ment.

24. Arvanitis and Jacobs do not insist or seek the
federal court to overturn the state court ruling
regarding the GROUP reclassification appeal.

25. Arvanitis and Jacobs seek to have the federal
court hear the denial of due process regarding
their INDIVIDUAL reclassification appeals.

26. Collings (along with all the other named defend-
ants) asserts that no deprivation of Due Process
Rights occurred regarding the reclassification

requests of Arvanitis and Jacobs made pursuant to
M.G.L. Chap 30, §49.

27. Collings falls into the same trap of assuming
that M.G.L. Chap 30, §49 is the law by which Ar-
vanitis and Jacobs submitted reclassification re-
quests.

28. The reclassification requests of Arvanitis and
Jacobs were made pursuant to Article 17.

29. It may be true that Arvanitis and Jacobs are
state-court losers as a class under M.G.L. Chap
30, §49 but they are assuredly not state court
losers under Article 17 of the applicable CBA as
individuals.

30. Where the CBA governing Arvanitis and Jacobs
grants them rights as individuals that are not
dependent on jurisdiction from M.G.L. Chap 30,
§49, their claims of deprivation of Due Process
Rights does not include a prior state court judg-
ment against them thus allowing 1st Federal Dis-
trict jurisdiction in the matter.

31. There is a legitimate question as to whether or
not the Due Process rights were denied regarding
the individual reclassification appeals of Ar-
vanitis and Jacobs.

11

32. Collings states

    "[a]ny purported deficiency in the process
    could have been corrected by the commission
    and the plaintiffs availed themselves of re-
    medial process." (RAR at 24)

33. The standards for summary judgment are clear in
    that dismissal is warranted when it is obvious as
    a matter of law that the defendants' actions have
    been determined to be accordance with the law.

34. The complaint alleges that defendants failed to
    observe, acknowledge, recognize or correct these
    documented due process deficiencies by not
    providing notice at any level until the commis-
    sion hearing.

35. The best and only support for these and subse-
    quent violations is the statement by Collings
    that the commission (and others) "could" [empha-
    sis added] have corrected these due process defi-
    ciencies and the mere fact they could have done
    so is sufficient.

36. This is akin to declaring that if a person is a
    victim of harassment, discrimination, or dispar-
    ate treatment by state officials while receiving
    a parking ticket, the state and federal courts do

12

not have to act if the person is declared to have received the parking ticket legally.

37. To declare that if someone *could* have corrected due process violations but, have never acknowledged or done so, satisfies the U.S. Constitution is untenable.

38. Where the record does not state as a matter of law that these due process deficiencies were addressed by the defendants, the state superior or appeals courts, then sufficient grounds for summary dismissal as provided for under the Rooker-Feldman doctrine is absent.

### ARGUMENT AGAINST

### DISMISSAL BASED ON THE GROUNDS OF QUALIFIED IMMUNITY.

39. The RAR states the

'"root requirement of the Due Process Clause [is] that an individual be given an opportunity for a hearing before he is deprived of any significant property interest…"' (RAR at 21) and that "[t]he U.S. Constitution requires only the [plaintiff] was provided notice and a meaningful opportunity to respond." (RAR at 22)

40. Collings goes on to state this constitutional "requirement was clearly met on the facts of the case." (RAR at 22)

41. As previously noted above in case of Haroon v. Department of Unemployment Assistance, Haroon re-

ceived the opportunity to complete an interview
guide, offer objections at the appeal audit and
be granted jurisdiction regarding his individual
appeal despite of and with the Department of Un-
employment Assistance, Personnel Administrator
and Commission's prior knowledge of the existence
of a group reclassification request involving un-
ion members of Haroon was a part of.

42. The glaring lack of meaningful opportunity to be
heard regarding the individual reclassification
requests of Arvanitis and Jacobs is contrasted by
the clear, unequivocal opportunity for Haroon to
be heard in identical circumstances and time pe-
riod.

43. Arvanitis and Jacobs respectfully object to the
determination on RAR 22 that they received the
minimal due process requirements guaranteed by
the Constitution.

44. Arvanitis and Jacobs submit their denial of Due
Process is not clearly established as a matter of
law but is more properly an issue of fact for the
Court to determine and thus not sufficient
grounds for summary dismissal.

14

## CONCLUSION

45. Arvanitis and Jacobs seek to have the wrongfully
    denied due process regarding their reclassifica-
    tion appeals rights as allowed under Article 17
    of the CBA and M.G.L. Chap.31, §2(b) restored.

46. No notice was given nor was opportunity given for
    Arvanitis and Jacobs to be heard pursuant to Ar-
    ticle 17 of the CBA or Chapter 31.

47. The plaintiffs aver that the complaint alleges
    certain defendants did mislead, withhold key
    facts and utter false statements while serving as
    officials of the Commonwealth of Massachusetts
    thus causing harm to the plaintiffs.

48. The complaint along with the presence of impro-
    priety by state officials constitute sufficient
    grounds for this Honorable Court to deny the de-
    fendants motion to dismiss or in the alternative
    hold an evidentiary hearing prior to rendering a
    decision on the motion to dismiss.

Respectfully Submitted:    September 6, 2011

Andrew Arvanitis                      Edward Jacobs
44 Hamlin Street                   112 Brackett Road
Lunenburg, MA 01462                 Newton, MA 02458
978 342 6172                           617 558 1490

15

## LOCAL RULE 7.1 CERTIFICATION

49.     We hereby certify that we conferred with or
attempted to confer with the defendants' Attorney
of Record Maryanne Reynolds, BBO# 627127 by tele-
phone on September 6, 2011 and attempted in good
faith to resolve or narrow the issue.

Andrew Arvanitis                          Edward Jacobs

## CERTIFICATE OF SERVICE

We hereby certify, under the penalties of perjury,
that we have made service on this date, of the follow-
ing listed documents.

### OPPOSITION TO REPORT AND RECOMMENDATION ON MOTION TO DISMISS

Service was made upon counsel for each other party by
depositing in the post office with first-class postage
prepaid, address as follows:  Maryanne Reynolds, BBO.
No. 627127, Assistant Attorney General, Office of the
Attorney General, Central Massachusetts Regional Of-
fice, 10 Mechanic Street, Suite 301, Worcester, MA
01608 on September 6 2011.

Andrew Arvanitis                    Edward Jacobs
44 Hamlin Street                    112 Brackett Road
Lunenburg, MA 01462                 Newton, MA 02458
978 342 6172                        617 558 1490

16