UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Andrew Arvanitis and <br> Edward Jacobs, <br><br> Plaintiffs, <br><br> v. <br><br> Massachusetts Department of Correction et al., <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 10-10213 <br> ) <br> ) <br> ) <br> ) <br> ) |

MEMORANDUM & ORDER

**CASPER, J.**                                                                 September 21, 2011

## I. Introduction

Plaintiffs Andrew Arvanitis and Edward Jacobs (collectively, the "Plaintiffs"), acting *pro se*, have sued four officials of the Massachusetts Department of Correction ("DOC"), an official at the Massachusetts Human Resources Division ("HRD"), four commissioners of the Massachusetts Civil Service Commission (the "Commission"), one Associate Justice of the Superior Court and three Associate Justices of the Massachusetts Appeals Court in an amended complaint for alleged "denial of due process" or "deprivation of constitutional rights in violation of 42 U.S.C. § 1981; 42 U.S.C. § 1983; [and] 42 U.S.C. § 1985(3)." Am. Compl. ¶¶ 3-16, 182. Plaintiffs, DOC employees who are members of labor union SEIU Local 509 and subject to a collective bargaining agreement ("CBA"), bring claims arising out of the DOC's denial of their request to have their positions reclassified from "Educational Specialist" to "Institutional School Teacher." According to

1

allegations in the amended complaint, the Defendants each had a role in reviewing and denying the Plaintiffs' job reclassification request (DOC defendants), reviewing and upholding the DOC's decision (HRD official and Commission defendants named in Counts I through VIII), reviewing the Commission's decision (the Massachusetts Superior Court judge named in Count IX); and reviewing the lower court's decision and affirming that judgment (the Massachusetts Appeals Court judges named in Count IX). Am. Compl. ¶¶ 18-182. Without repeating the summary of the Plaintiffs' allegations and procedural history of their claims in state court,[1] Report and Recommendation ("R&R") at 2-6, Plaintiffs allege that there were numerous procedural defects in the consideration of their job reclassification request at the employer, administrative agency and court level.

The Defendants have now moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1), (6) and 12(h)(3), on the grounds of sovereign immunity, quasi-judicial immunity and qualified immunity (for Counts I through VIII against the DOC defendants, HRD official and Civil Service commissioners) and judicial immunity (for Count IX against the named state court judges). Def. Mot. at 1-2. The Defendants also argue that all claims against the state court judges are barred by

---

[1] "After discovery and a formal hearing, the [C]ommission concluded, . . . , that it lacked jurisdiction to consider the plaintiffs' request for reclassification," relying on Mass. Gen. L. c. 30, § 49 which provides, in relevant part, that "[t]he provisions of this section, as they relate to appeals on the reallocation of a class or group of classes to a higher job group or job groups, shall not apply to any employee whose position is included in a collective bargaining unit represented by an employee organization." Arvanitis v. Civil Serv. Comm'n., 74 Mass. App. Ct. 1109 (Table) (2009). In reaching this conclusion, the Commission found that the plaintiff's union representative had recommended that the "Educational Specialist remain a separate title" and since the Plaintiffs are similarly situated to others at DOC, their request for reclassification "could not be considered apart from the treatment of that class in the CBA." Id. "Accordingly, the [C]ommission concluded that it '*does not have jurisdiction over challenges to reallocation of positions resulting from collective bargaining*' and dismissed the appeal." Id. (emphasis in original) (quoting Commission's findings). The Superior Court affirmed the Commission's ruling and the Appeals Court affirmed the lower court's decision. Id.

the Rooker-Feldman doctrine. Def. Memo at 22-23. The Court referred the matter to the magistrate session (Collings, M.J.). The magistrate judge issued his R&R on August 11, 2011 recommending that the Court grant the motion to dismiss on the grounds that the court "lacks subject matter jurisdiction under the Rooker-Feldman doctrine" or, alternatively, on the grounds of qualified immunity (for Counts I to VIII) and judicial immunity (Count IX). R&R at 2. Plaintiffs have now filed objections to the R&R and the Defendants have filed a reply to those objections. D. 49, 50.

**II.    Discussion**

A district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). This Court, pursuant to 28 U.S.C. § 636(b)(1), must make "a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which the parties have objected." Id.; see Fed. R. Civ. P. 72(b)(3). The Plaintiffs object to the recommendation that the matter be dismissed on Rooker-Feldman or immunity grounds. Pl. Objs. 2-14.

    **A.    Dismissing on *Rooker-Feldman* Grounds**

The R&R recommends that this case, in its entirety, be dismissed on Rooker-Feldman grounds. R&R at 12. This doctrine derives from two Supreme Court decisions, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983), and, arises from the tenet that "district courts [do] not have the authority to review final judgments of state courts; only the Supreme Court has that power." Davison v. Gov't of P.R.-P.R. Firefighters Corps., 471 F.3d 220, 222 (1st Cir. 2006). It is a jurisdictional doctrine that, if it applies, divests a federal district court of subject matter jurisdiction. Silva v. Massachusetts, 351 F. App'x 450, 454

(1st Cir. 2009); Maymó-Meléndez v. Álvarez-Ramírez, 364 F.3d 27, 33 n.7 (1st Cir. 2004). The Rooker-Feldman doctrine, as it stands now, applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) (confining Rooker-Feldman doctrine to this circumstance); see Lance v. Dennis, 546 U.S. 459, 463 (2006) (same). That is, "[p]ost-Exxon, the lower courts cannot rely on Rooker-Feldman to dismiss a case unless, *inter alia*, the federal plaintiff seeks redress of an injury *caused by* an allegedly erroneous state court decision; if the plaintiff alleges a constitutional violation by an adverse party independent of the injury caused by the state court judgment, the doctrine does not bar jurisdiction." Davison, 471 F.3d at 222 (emphasis in original). However, the doctrine "does not depend on what issues were actually litigated in the state court." Maymó-Meléndez, 364 F.3d at 33. "[I]t is enough" that granting plaintiffs the relief they seek "would effectively overturn the state court's decision." Id. Relying upon the First Circuit's application of the Rooker-Feldman doctrine, the magistrate judge recommended that this Court dismiss the complaint on this basis. See R&R at 12-16.

Upon review of the applicable law and the objections made by Plaintiffs, this Court agrees with this recommendation and, accordingly, will dismiss Counts I-IX on this basis. Without repeating the analysis in the R&R on this matter, the Court concludes that Rooker-Feldman applies here. First, Plaintiffs were the "state-court losers" regarding the reclassification matter. Second, the state court judgment regarding same was rendered before the commencement of this federal lawsuit. Compare Arvanitis, 74 Mass. App. Ct. 1109 (Table), review denied, 454 Mass. 1109 (2009) with Arvanitis v. Dep't of Corr., No. 10-cv-10213-DJC (complaint filed Jan. 27, 2010). The

substance of Plaintiffs' objections as to the application of Rooker-Feldman concern whether, as the R&R concluded, the remaining prongs of this test–i.e., whether the injury of which they complain is the state court judgment and whether the instant action invites this Court to review and reject that judgment–have been satisfied. This Court concludes that they have been.

At base, Plaintiffs' injury is the state court judgment of the Superior Court (and the Appeals Court affirming the lower court's ruling). The circumstances and posture of this case are similar to those in Davison, in which the First Circuit ruled that the plaintiffs' suit was barred by the Rooker-Feldman doctrine. 471 F.3d at 223. In Davison, the district court had dismissed plaintiff's due process and equal protection claims against various defendants on Rooker-Feldman grounds. Id. at 221. Their claims arose "over the existence, location and characteristics of a common fire corridor across [p]laintiffs' allegedly private terrace." Id. The plaintiffs appealed an order regarding the terrace by the Puerto Rico Firefighters Corps ("PRFC order"), but the Puerto Rico Court of Appeals ruled that the appeal was untimely and upheld the PRFC order and later, upon the plaintiffs' petition for reconsideration, the court affirmed that decision. Id. at 222. When plaintiffs later did not comply with the order, the government filed suit in state court to get them to comply. Id. In the course of that litigation, up through appellate review by the Puerto Rico Supreme Court, the plaintiffs attempted to challenge the Court of Appeals' earlier affirmation of the PRFC order. Id. They were unsuccessful in doing so and the "[p]laintiffs were eventually held in contempt of court for not complying with the order." Id. They then brought their federal lawsuit. On appeal from the dismissal of their due process and equal protection claims against defendants including the PRFC, the plaintiffs in Davison argued that Rooker-Feldman should not bar their action because 1) they "have never had their day in court"; and 2) the injury they claimed did not arise from the PRFC and

state courts' affirmation of the order, but from the subsequent "enforcement battles over the order" that gave rise to due process and equal protection claims independent from any injury from the state judgment. Id. at 223. The First Circuit rejected both arguments, concluding that the acceptance of the first "would be to say that the Puerto Rico Court of Appeals was wrong in holding that Plaintiffs' initial appeal of the PRFC order was untimely and that the highest court in Puerto Rico was wrong in denying Plaintiffs' challenge to the same order on the grounds of res judicata" and plaintiffs' reasoning as to the second argument "fails . . . because the only real injury to [p]laintiffs is ultimately still caused by a state court judgment." Id. Accordingly, accepting either argument was barred by the Rooker-Feldman doctrine. Id.

In this case, despite their arguments otherwise, the real injury to Plaintiffs is ultimately still the state court judgment, affirming the administrative decision to deny their reclassification request. They have challenged the denial of their reclassification request at every level of administrative and state court appellate review and, although their claims now against the decision-makers at every level of that review are framed as constitutional claims, "[t]o find for Plaintiffs now would require us to declare that the state court wrongly decided Plaintiffs' claim," which Rooker-Feldman bars this Court from doing. Id.; see Silva, 351 F. App'x at 456 (concluding that "[t]his [Rooker-Feldman] bar applies notwithstanding that the [plaintiffs] are asserting in their federal action a federal constitutional claim pursuant to 42 U.S.C. § 1983"); see also Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 87 (2d Cir. 2005) (noting that "a federal plaintiff cannot escape the Rooker-Feldman bar simply by relying on a legal theory not raised in state court"). To rule, as the Plaintiffs seem now to suggest in their objections, Pl. Objs. at 7-10, that the CBA governs their reclassification request and the Commission has the jurisdiction to hear their "individual appeal[s]" regarding same

to the Commission, would effectively overrule the state court judgments affirming the Commission's decision that it did not have jurisdiction.

Moreover, that the Plaintiffs' instant action invites this Court to review and reject those judgments is most evident from the scope of relief that they seek from this Court. See, e.g., Silva, 351 F. App'x at 455-56 (examining the relief that plaintiffs sought to determine if the federal action invited district court review and rejection of state court judgments for the purposes of the Rooker-Feldman doctrine). Plaintiffs seek not only damages, but request that this Court "[v]acate the rulings of the defendants," "[g]rant the[ir] reclassification appeals," "remand the matter as originally before the Department of Correction" and "[r]etain jurisdiction until this matter is properly adjudicated." Am. Compl. (Claim for Relief). If granted, each of these remedies would implicate the soundness of the Superior Court's decision, and the Massachusetts Appeals Court's decision affirming same, which is barred by Rooker-Feldman. Silva, 351 Fed. Appx. at 456 (citing Davison, 471 F.3d at 223).

### B. Dismissing on Immunity Grounds

#### 1. Judicial Immunity

Even if Rooker-Feldman did not apply, Claim IX against members of the state judiciary would be barred by judicial immunity. As the R&R recognized and discussed, R&R at 17-18, "[j]udges are entitled to absolute immunity from lawsuits even where they are accused of deciding the case due to improper motives." Guzmán-Rivera v. Lucena-Zabala, 642 F.3d 92, 96 (1st Cir. 2011) (citing Butz v. Economou,, 438 U.S. 478, 508-09 (1978)); see Pierson v. Ray, 386 U.S. 547, 554 (1967). "[A]bsolute judicial immunity protects judges from acts performed within the scope of their jurisdiction." DeFeudis v. DeFeudis, 2011 WL 130334, at *4 (D. Mass. Jan. 13, 2011). The

scope of this immunity is warranted to protect the integrity of the judicial decision-making process. See Pierson, 386 U.S. at 553-54.

First, however the Plaintiffs' allegations can be construed against the judges in Claim IX, there is no credible allegation that the judges acted outside of their jurisdiction. Second and most significantly, although Plaintiffs claim that the judges impermissibly deferred to the ruling of the Commission and improperly failed to reach and address their constitutional claims, Am. Compl. ¶¶ 172-82, these allegations do not exempt these alleged errors from falling within the scope of absolute judicial immunity.

### 2. Qualified Immunity

The R&R recommends that this Court may dismiss Counts I through VIII on Rooker-Feldman grounds as discussed above, or alternatively, on the basis of qualified immunity. R&R at 18-24. Without repeating that analysis, but upon review of the applicable law and the Plaintiffs' objections to same, the Court adopts this alternative basis for dismissal for Counts I through VIII. "Public officials have 'qualified immunity from personal liability for actions taken while performing discretionary functions.'" Barton v. Clancy, 632 F.3d 9, 21 (1st Cir. 2011) (quoting Lynch v. City of Boston, 180 F.3d 1, 13 (1st Cir. 1999)). To determine whether qualified immunity applies, a court must engage in two-step analysis: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Barton, 632 F.3d at 21-22 (quoting Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009)); see Pearson v. Callahan, 555 U.S. 223, 232 (2009). "Courts may conduct this inquiry sequentially, or resolve a particular case on the second prong alone." Barton, 632 F.3d at 22.

Conducting this inquiry sequentially, this Court agrees that the plaintiffs have failed, in the first instance, to allege sufficient facts to make out a violation of a constitutional right. Plaintiffs claim a host of alleged deficiencies in the proceedings before the DOC, HRD and the Commission. Even assuming that Plaintiffs had a constitutionally protected interest in their reclassification as Institution School Teachers, see R&R at 20 n. 5, the procedural defects that they allege do not constitute constitutionally inadequate process sufficient to support a procedural due process claim.[2] As the magistrate judge recognized, the standard in this context is not as high as Plaintiffs suggest since the U.S. Constitution requires only pre-deprivation notice and opportunity to be heard. R&R at 21 (citing Chmielinski v. Massachusetts, 513 F.3d 309, 316 (1st Cir. 2008)). Moreover, to the extent that Plaintiffs allege that some of the Defendants' alleged shortcomings were their failures to comply with their own administrative procedures, "[a]n agency's failure to follow its own rules may be significant in administrative law, but the federal Due Process Clause does not incorporate the particular procedural structure enacted by state or local governments. . . ." Chmielinski, 513 F.3d at 316 n.5 (internal quotation marks and citations omitted). Plaintiffs also received the benefit and protection of multiple levels of administrative and judicial review. See Maymí, 515 F.3d at 30 (relying upon the plaintiff having availed herself of the administrative procedures of an appeals process to challenge her alleged salary and benefit deprivations to conclude that they provided sufficient due process). For these reasons, and as more fully discussed in the R&R at 20-24 and

---

[2]To the extent that it could be said Plaintiffs are also alleging a substantive due process claim, their allegations are not sufficient to state such a claim. "A substantive due process claim requires allegations that the government conduct was, in and of itself, inherently impermissible irrespective of the availability of remedial or protective procedures." Maymí v. P.R. Ports Auth., 515 F.3d 20, 30 (1st Cir. 2009). Their allegations, even taken as true for the purposes of the Defendants' motion to dismiss, do not "shock the conscience" as they must to state such a claim.

adopted by this Court, the Court concludes that Plaintiffs have failed to alleged a constitutional violation[3] and, as such, Defendants are entitled to qualified immunity.

**III.     Conclusion**

For the foregoing reasons, the report and recommendation of Magistrate Judge Collings is ADOPTED and ACCEPTED by the Court. Accordingly, the Defendants' motion to dismiss is GRANTED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge

---

[3]Since the first prong of the two-step analysis under Barton, 632 F.3d at 21-22 has not been satisfied, the Court need not address the second prong.